UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:18-CV-00175-HBB

TONYA G. JOHNSON                                                               PLAINTIFF

VS.

ANDREW SAUL, COMMISSIONER
SOCIAL SECURITY ADMINISTRATION[1]                          DEFENDANT

**MEMORANDUM OPINION
AND ORDER**

BACKGROUND

Before the Court is the complaint (DN 1) of Tonya G. Johnson ("Plaintiff") seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g). Both the Plaintiff (DN 14) and Defendant (DN 20) have filed a Fact and Law Summary. For the reasons that follow, the final decision of the Commissioner is reversed, and this matter is remanded, pursuant to 42 U.S.C. § 405(g), to the Commissioner for further proceedings.

Pursuant to 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73, the parties have consented to the undersigned United States Magistrate Judge conducting all further proceedings in this case, including issuance of a memorandum opinion and entry of judgment, with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed (DN 11). By Order entered July 8,

---

[1] Andrew Saul is now the Commissioner of Social Security and is automatically substituted as a party pursuant to Fed.R.Civ.P. 25(d). *See also* Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g) (action survives regardless of any change in the person occupying the office of Commissioner of Social Security).

2019 (DN 13), the parties were notified that oral arguments would not be held unless a written request therefor was filed and granted. No such request was filed.

FINDINGS OF FACT

Plaintiff protectively filed an application for Disability Insurance Benefits on March 11, 2013 (Tr. 24, 244-50). Plaintiff alleged that she became disabled on January 23, 2013, because of chronic neck and back pain with neuropathy, obesity, depression, chronic diarrhea, sleep disorders, persistent bladder infections, and high cholesterol (Tr. 24, 294). On November 4, 2014 and April 16, 2015, Administrative Law Judge Karen R. Jackson ("ALJ") conducted a video hearing from Lexington, Kentucky (Tr. 24, 43-82, 83-105). Plaintiff and her attorney, Richard Burchett, participated from Campbellsville, Kentucky (Id.). Linda Taber, a vocational expert, testified during the April 16, 2015 hearing (Tr. 24, 43-82).

In a decision dated May 26, 2015, the ALJ evaluated this adult disability claim pursuant to the five-step sequential evaluation process promulgated by the Commissioner (Tr. 24-37). The ALJ determined that Plaintiff met the insured status requirements through December 31, 2017 (Tr. 26). At the first step, the ALJ found Plaintiff has not engaged in substantial gainful activity since January 23, 2013 the alleged onset date (Id.). At the second step, the ALJ determined that Plaintiff has the following severe impairments: lumbar and cervical degenerative disc disease; minimal degenerative joint disease/bursitis of the left hip; obesity; depressive disorder; generalized anxiety disorder; and post-traumatic stress disorder (Id.). The ALJ also determined while Plaintiff has been diagnosed with hypertension, a history of chronic cystourethritis, and bilateral wrist osteoarthritis these impairments are non-severe because the evidence fails to demonstrate they cause more than minimal limitations (Tr. 27). At the third step, the ALJ concluded that

Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in Appendix 1 (Tr. 27).

At the fourth step, the ALJ found Plaintiff has the residual functional capacity to perform light work except that she can only lift 20 pounds occasionally and 10 pounds frequently; she can stand/walk for six hours in an eight-hour day; she can occasionally climb ramps and stairs, but never climb ladders, ropes, and scaffolds; she can only occasionally stoop, kneel, crouch, and crawl; she must avoid concentrated exposure to vibration and all exposure to hazards such as unprotected heights or dangerous machinery; she can only perform simple, routine work tasks; she can maintain attention and concentration for two-hour segments during an eight-hour workday; she can adapt to gradual changes in a routine work environment; and she can interact frequently with supervisors and coworkers, but only occasionally with the general public (Tr. 29). Relying on testimony from the vocational expert, the ALJ found that Plaintiff is unable to perform any of his/her past relevant work (Tr. 35).

The ALJ proceeded to the fifth step where she considered Plaintiff's residual functional capacity, age, education, and past work experience as well as testimony from the vocational expert (Tr. 35-36). The ALJ found that Plaintiff is capable of performing a significant number of jobs that exist in the national economy (Id.). Therefore, the ALJ concluded that Plaintiff has not been under a "disability," as defined in the Social Security Act, from January 23, 2013 through the date of the decision (Tr. 36).

Plaintiff timely filed a request for the Appeals Council to review the ALJ's decision (Tr. 18-20). The Appeals Council denied Plaintiff's request for review (Tr. 1-4).

On August 18, 2016, Plaintiff filed a complaint before the Court (DN 1, Civil Action No. 1:16-CV-00135-HBB). After considering the arguments of Plaintiff and the Commissioner, the Court issued a memorandum opinion and order reversing the final decision of the Commissioner and remanding the matter, pursuant to 42 U.S.C. § 405(g), to the Commissioner for further proceedings (Tr. 1025-38). More specifically, the Court concluded the ALJ failed to consider whether Plaintiff's shoulder condition was a severe impairment and whether it imposed any limitations on her residual functional capacity despite substantial medical and testimonial evidence regarding this impairment (Id.).

The Appeals Council remanded the case to the ALJ for further proceedings consistent with the Court's decision (Tr. 141-44). Additionally, the Appeals Council instructed the ALJ to offer Plaintiff the opportunity for hearing and address the additional evidence submitted, take any further action needed to complete the administrative record, and issue a new decision (Tr. 1043).

On May 23, 2018, the ALJ conducted a video hearing from Lexington, Kentucky (Tr. 873, 894-930). Plaintiff and her attorney, Richard Burchett, participated from Campbellsville, Kentucky (Id.). Martha R. Goss, a vocational expert, testified during the hearing (Id.).

In a decision dated August 15, 2018, the ALJ evaluated this adult disability claim pursuant to the five-step sequential evaluation process promulgated by the Commissioner (Tr. 873-84). Again, the ALJ determined that Plaintiff last met the insured status requirements on December 31, 2017 (Tr. 875). At the first step, the ALJ found Plaintiff has not engaged in substantial gainful activity from her alleged onset date of January 23, 2013, through her date last insured of December 31, 2017 (Id.). At the second step, the ALJ determined that Plaintiff has the following severe impairments: degenerative disc disease throughout the spine, status post ACDF of the cervical

4

spine; bursitis of the left shoulder and left hip; osteoarthritis in the wrists bilaterally; obesity; umbilical hernia; depressive disorder; generalized anxiety disorder; and posttraumatic stress disorder (Id.). At the third step, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in Appendix 1 (Tr. 876).

At the fourth step, the ALJ found Plaintiff has the residual functional capacity to perform sedentary work except that she can only occasionally reach overhead bilaterally with the upper extremities; she can only frequently handle finger and feel bilaterally; she can occasionally climb ramps and stairs, but never ropes, ladders, or scaffolds; she can occasionally stoop, kneel, crouch, and crawl; she must avoid concentrated exposure to vibration, as well as all exposure to hazards such as unprotected heights or dangerous moving machinery; she is further limited to simple work tasks; she is able to adapt to gradual changes in a routine work environment, and can interact frequently with supervisors and co-workers; and she can occasionally interact with the public (Tr. 877-78). Relying on testimony from the vocational expert, the ALJ found through the date last insured Plaintiff was unable to perform any past relevant work (Tr. 882).

The ALJ proceeded to the fifth step where he considered Plaintiff's residual functional capacity, age, education, and past work experience as well as testimony from the vocational expert (Tr. 883-84). The ALJ found through the date last insured Plaintiff was able to perform a significant number of jobs that existed in the national economy (Id.). Therefore, the ALJ concluded that Plaintiff was not under a "disability," as defined in the Social Security Act, at any time from January 23, 2013, the alleged onset date, through December 31, 2017, the date last insured (Tr. 884).

Plaintiff again returns to the Court challenging the final decision of the Commissioner (DN 1). Plaintiff and Defendant have filed their fact and Law summaries (DN 14, 20) and this matter is ripe for determination.

CONCLUSIONS OF LAW

Standard of Review

Review by the Court is limited to determining whether the findings set forth in the final decision of the Commissioner are supported by "substantial evidence," 42 U.S.C. § 405(g); Cotton v. Sullivan, 2 F.3d 692, 695 (6th Cir. 1993); Wyatt v. Sec'y of Health & Human Servs., 974 F.2d 680, 683 (6th Cir. 1992), and whether the correct legal standards were applied. Landsaw v. Sec'y of Health & Human Servs., 803 F.2d 211, 213 (6th Cir. 1986). "Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." Cotton, 2 F.3d at 695 (quoting Casey v. Sec'y of Health & Human Servs., 987 F.2d 1230, 1233 (6th Cir. 1993)). In reviewing a case for substantial evidence, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." Cohen v. Sec'y of Health & Human Servs., 964 F.2d 524, 528 (6th Cir. 1992) (quoting Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984)).

The ALJ's decision became the final decision of the Commissioner (DN 20 PageID #1587). 20 C.F.R. §§ 404.955, 404.984; *see* 42 U.S.C. § 405(h) (finality of the Commissioner's decision). Thus, the Court will be reviewing the decision of the ALJ and the evidence that was in the administrative record when the ALJ rendered the decision. 42 U.S.C. § 405(g); 20 C.F.R. § 404.981; Cline v. Comm'r of Soc. Sec., 96 F.3d 146, 148 (6th Cir. 1996); Cotton v. Sullivan, 2 F.3d 692, 695-696 (6th Cir. 1993).

6

## The Commissioner's Sequential Evaluation Process

The Social Security Act authorizes payment of Disability Insurance Benefits and Supplemental Security Income to persons with disabilities. 42 U.S.C. §§ 401 et seq. (Title II Disability Insurance Benefits), 1381 et seq. (Title XVI Supplemental Security Income). The term "disability" is defined as an

> [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months.

42 U.S.C. §§ 423(d)(1)(A) (Title II), 1382c(a)(3)(A) (Title XVI); 20 C.F.R. §§ 404.1505(a), 416.905(a); Barnhart v. Walton, 535 U.S. 212, 214 (2002); Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990).

The Commissioner has promulgated regulations setting forth a five-step sequential evaluation process for evaluating a disability claim. *See* "Evaluation of disability in general," 20 C.F.R. §§ 404.1520, 416.920. In summary, the evaluation proceeds as follows:

1) Is the claimant engaged in substantial gainful activity?

2) Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement and significantly limits his or her ability to do basic work activities?

3) Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within Appendix 1?

4) Does the claimant have the residual functional capacity to return to his or her past relevant work?

5) Does the claimant's residual functional capacity, age, education, and past work experience allow him or her to perform a significant number of jobs in the national economy?

Here, the ALJ denied Plaintiff's claim at the fifth step.

Finding No. 4

1. Arguments of the Parties

The Court will begin with Plaintiff's challenge to the ALJ's determination that she does not meet or medically equal Listing 1.04 (DN 14 PageID # 1569-71). In addition to complaining about its brevity, Plaintiff argues to the extent the ALJ's conclusion may address subpart A it is not supported by substantial evidence in the record[2] (Id.). Plaintiff claims she qualifies as disabled under Listing 1.04A (Id.).

Defendant acknowledges the ALJ's determination is brief but asserts that courts have been reluctant to impose a strict articulation standard on the adjudicator at the third step (DN 20 PageID # 1589-92 citing Price v. Heckler, 767 F.2d 281, 284 (6th Cir. 1985)). Even if the ALJ should

---

2 Plaintiff explains that MRI's of her lumbar spine, taken on March 5, 2009 and June 18, 2015, demonstrate she has spinal stenosis and degenerative disc disease, two of the spinal disorders identified in Listing 1.04 (DN 14 PageID # 1570, citing Tr. 368, 864). Plaintiff contends to determine whether the nerve root compression criteria in subpart A is satisfied, the ALJ should have also considered the opinions of Dr. Thad Jackson (treating neurosurgeon) and Dr. Ajith Nair (treating pain management physician) (Tr. 367, 869); examinations between 2012 and 2015 revealing decreased lumbar range of motion measurements with pain upon flexion and extension and left leg weakness (Tr. 371, 452, 648, 696, 701, 711, 716, 722, 727, 731, 737, 742, 747, 752, 757, 763, 769, 775, 779, 783, 786, 792, 794, 801, 806, 810, 814, 819, 823, 827, 832, 836, 841); sensory loss documented by decreased sensation upon examination in March 2011 (Tr. 365); a nerve conduction study that showed very severe (+5) deviation index with bilateral L1 to S1 measurements; medical records showing left straight leg raising was positive as early as 2009 and was positive at 40 degrees between 2013 and 2015; and medical records showing that her right straight leg raising was positive between 2013 and 2015 (Tr. 36, 451, 696, 701, 711, 716, 722, 727, 731, 737, 742, 747, 752, 757, 763, 769, 775, 779, 783, 786, 792, 794, 801, 806, 810, 814, 819, 823, 827, 832, 836, 841).

have provided more discussion of the evidence relating to subpart A, Defendant argues the error is harmless because Plaintiff fails to satisfy the sensory or reflex loss requirement[3] of subpart A (Id.).

2. Applicable Law

At the third step, a claimant will be found disabled if her impairment meets or medically equals one of the listings in the Listing of Impairments. 20 C.F.R. § 404.1520(a)(4)(iii); Turner v. Comm'r of Soc. Sec., 381 F. Appx. 488, 491 (6th Cir. 2010). The Listing of Impairments, set forth in Appendix 1 to Subpart P of the regulations, describes impairments the Social Security Administration considers to be "severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. § 404.1525(a).

Each listing specifies "the objective medical and other findings needed to satisfy the criteria of that listing." 20 C.F.R. § 404.1525(c)(3). A claimant must satisfy all the criteria to "meet" the listing and be deemed disabled. *See* 20 C.F.R. § 404.1525(c)(3) and (d); Hale v. Sec'y of Health & Human Servs., 816 F.2d 1078, 1083 (6th Cir. 1984). However, a claimant is also deemed disabled if her impairment is the medical equivalent of a listing. 20 C.F.R. § 504.1520(a)(4)(iii); Turner, 381 F. Appx. at 491. Medical equivalence means "at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. § 404.1526(a). "An administrative law judge must compare the medical evidence with the requirements for listed

---

[3] Defendant asserts the March 2011 finding of slight decreased sensation is not relevant because it predates the alleged onset date by almost two years (DN 20 PageID # 1589-92 citing Tr. 365). Additionally, the results of the nerve conduction study are inconsistent with Dr. Nair's examination that revealed normal touch and pin sensations, no non-dermatomal sensory changes, and deep tendon reflexes that were normal and equally reactive bilaterally (Id. citing Tr. 796). Further, numerous records during the relevant period also indicate such normal findings (Id. citing Tr. 696, 701, 706, 711, 716, 722, 727, 731, 737, 742, 747, 752, 757, 763, 769, 775, 779, 783, 788, 792, 796, 801, 806, 810, 814, 819, 823, 827, 832, 836, 841).

impairments in considering whether the condition is equivalent in severity to the medical findings for any Listed Impairment." Reynolds v. Comm'r Soc. Sec., 424 F. Appx 411, 415 (6th Cir. 2011). Additionally, the administrative law judge looks to the opinions of the state agency medical advisors and/or the opinion of a testifying medical expert for guidance on the issue of whether the claimant's impairment is the medical equivalent of a listing. *See* 20 C.F.R. § 404.1526(c) and (d); Social Security Ruling 17-2p, 2017 WL 3928306, at *3-4 (March 27, 2017); Deters v. Sec'y of Health, Educ. & Welfare, 789 F.2d 1181, 1186 (5th Cir. 1986).

The listing at issue reads:

> 1.04 *Disorders of the spine* (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);
>
> or
>
> B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;
>
> or
>
> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable

> imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. pt. 404, subpt. P, App. 1, Listing 1.04.

The Sixth Circuit has instructed when an administrative law judge finds that a claimant does not meet or medically equal a specific listing, the administrative law judge must actually evaluate the evidence, compare it to the section of the Listing at issue, and give an explained conclusion, in order to facilitate meaningful judicial review. Reynolds, 424 F. Appx. at 415-16. "Without it, it is impossible to say that the [administrative law judge's] decision at Step Three was supported by substantial evidence." Id. at 416 (citing Clifton v. Chater, 79 F.3d 1007, 1009 (10th Cir.1996); Senne v. Apfel, 198 F.3d 1065, 1067 (8th Cir.1999); Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 120 (3d Cir.2000)).

3. Discussion

At step three, the ALJ began with her conclusion: "[t]hrough the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526)" (Tr. 876). In the discussion that followed, she specifically analyzed whether Plaintiff met or medically equaled the following listings: 1.02 Major dysfunction of a joint(s); 1.04 Disorders of the spine; 12.04 Depressive, bipolar and related disorders; and 12.06 Anxiety and obsessive-compulsive disorders (Tr. 876-77). The ALJ's analysis of Listing 1.04 reads as follows:

> Further, the undersigned considered listing 1.04 for disorders of the spine. In order to meet this listing, the claimant must show a disorder of the spine resulting in compromise of a nerve root or the

> spinal cord. In addition, she must also show one of the following: evidence of nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis resulting in pseudoclaudication, with an inability to ambulate effectively. ***Here, imaging of the spine does not show the level of degeneration described by the listing*** (5F/35-36; 23F/2).

(Tr. 876, *emphasis added*). The ALJ provided a cryptic conclusory statement with a citation to an October 30, 2012 MRI of Plaintiff's cervical spine[4] and a June 18, 2015 MRI of Plaintiff's lumbar spine[5] (Tr. 500-01, 864). To facilitate meaningful judicial review, the ALJ needed to actually evaluate the medical evidence, compare it to the severity criteria in subparts A, B, and C of Listing 1.04, and provide an explained conclusion. *See* Reynolds, 424 F. Appx at 416. Without this information, it is impossible to say that substantial evidence in the record supports the ALJ's decision at step three. Id.

Defendant argues the ALJ's error was harmless because Plaintiff may not satisfy the sensory and reflex loss criteria for subpart A of the listing. The ALJ's error was not harmless, because it is possible that the evidence Plaintiff put forth could meet or medically equal Listing 1.04. *See* Reynolds, 424 F. Appx. at 416 (the error was not harmless because it was possible that the claimant had put forward sufficient evidence to meet the listing). Additionally, Defendant's harmless error argument would require the Court to weigh conflicting medical evidence[6] (*see* DN

---

4 The October 2012 MRI revealed C2-3 posterior central disc protrusion without cervical cord or radicular impingement; C4-5 posterior central to right central disc protrusion with mild cervical cord impingement, but without cervical cord displacement or compression; and C6-7 shallow broad-based disc protrusion without cervical cord or radicular impingement (Tr. 500-01).
5 The June 2015 MRI shows at the L2-3 level a 4-5 mm broad-based subligamentous disc protrusion with mild spinal stenosis; at the L1-2 level a 3-4 mm disc protrusion that did not appear to touch or efface the exiting nerve roots; at the L4-5 level a 3 mm broad-based disc protrusions containing epidural fat; at the L3-4 level a 1-2 mm broad-based disc bulge; and at the L5-S1 a 2 mm broad-based disc bulge (Tr. 864).
6 Specifically, Defendant asserts the results of a nerve conduction study are inconsistent with examination findings (*see* DN 20 PageID # 1592).

20 PageID # 1592). However, the Court is limited to determining whether the findings set forth in the final decision of the Commissioner are supported by "substantial evidence" and whether the correct legal standards were applied. Gayheart v. Comm'r of Soc. Sec., 710 F.3d 365, 374 (6th Cir. 2013) (citing 42 U.S.C. § 405(g); Cole v. Astrue, 661 F.3d 931, 937 (6th Cir. 2011)). Because the Court has no way to review the ALJ's hopelessly insufficient step three ruling, the Court, pursuant to sentence four of 42 U.S.C. § 405(g), will vacate the final decision of the Commissioner and remand the case to the Commissioner for further proceedings.

## ORDER

**IT IS HEREBY ORDERED** that the final decision of the Commissioner is **REVERSED.**

**IT IS FURTHER ORDERED** that this matter is **REMANDED**, pursuant to 42 U.S.C. § 405(g), to the Commissioner for further proceedings.

November 8, 2019

H. Brent Brennenstuhl
United States Magistrate Judge

Copies:    Counsel